UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In Re:

      LIEN APPEALS

                                        Case Nos.:   06-12774

AYDEN ONEL, M.D.,                            06-10778
                                              06-10779

      Appellant.                            06-10781
                                              06-10782

                                      Honorable Denise Page Hood

_____/

MEMORANDUM OPINION AND ORDER
REGARDING AYDIN ONEL LIEN APPEALS

I.      BACKGROUND

      This matter is before the Court on appeals filed by Aydin Onel, M..D. from the Lien

Judge's decision that Dr. Onel's liens against various claimants are invalid and unenforceable.

Briefs were filed on behalf of Dr. Onel and the Claimants represented by the law firm of Barrios,

Kingsdorf & Casteix, L.L.P. ("Barrios Firm").[1]  The parties waived oral arguments.

      Dr. Onel, a Qualified Medical Doctor ("QMD"), filed notices of lien with the Settlement

Facility-Dow Corning Trust ("SF-DCT"), asserting liens in the amount of $4,000.00 against each

---

[1]  Dr. Onel filed one appeal from the Lien Judge's decision involving all of the asserted liens against claimants listed in Exhibit B of his brief.  The Barrios Firm does not represent all of these claimants.  The Barrios Firm represents the claimants listed in Exhibit 1 of the Barrios Firm's brief.

      Dr. Onel filed four previous Lien Appeals: 06-10778 (Penny Hodges); 06-10779 (Barbara Staples); 06-10781 (Katie Gould); and 06-10782 (Lilian Castille).  These four appeals were appeals from the SF-DCT's dismissal of Dr. Onel's liens as untimely.  These appeals are moot in light of the Lien Judge's decision which addressed the liens asserted by Dr. Onel, including these four claimants.  The claimants are listed in Exhibit B of Dr. Onel's brief: Penny Hodges (No. 84); Barbara Staples (No. 117); Katie Gould (No. 50); and Lilian Castille (No. 68).

Claimant listed in Exhibit B of Dr. Onel's brief.  The Claimants represented by the Barrios Firm objected to the liens before the SF-DCT on behalf of its clients listed in Exhibit 1 of its brief. The Lien Judge, Frank Andrews, issued his decision on May 31, 2006 finding that Dr. Onel's liens were invalid and unenforceable.  (Onel Br., Ex. B) The SF-DCT mailed a copy of the decision on May 31, 2006.  On June 20, 2006, a Notice of Appeal of Lien Denial Decision was filed with the Court on behalf of Dr. Onel.  (Barrios Br., Ex. 16)

## II.    ANALYSIS

### A.    Jurisdiction/Standard of Review

The Court has subject matter jurisdiction over the post-confirmation lien appeal pursuant to 28 U.S.C. § 1334(b) because the Lien Judge's decision could conceivably have an effect on the estate being administered in bankruptcy.  *See In re Wolverine Radio Co.,* 930 F.2d 1132, 1141 (6th Cir. 1991); *Browning v. Levy,* 283 F.3d 761, 773 (6th Cir. 2002).  The Court retains jurisdiction to interpret and enforce confirmed plans of reorganization.  *See In re Thickstun Bros. Equip. Co., Inc.,* 344 B.R. 515, 522 (6th Cir. B.A.P. 2006); *In re Beta Int'l, Inc.,* 210 B.R. 279, 284 (E.D. Mich. 1996).  The Amended Joint Plan of Reorganization ("Plan") provides that the Court has the authority to resolve controversies and disputes regarding the interpretation of the Plan and Plan Documents, which includes the Settlement Facility and Fund Distribution Agreement ("SFA")  *See* Amended Joint Plan, § 8.7.3; SFA, §§ 4.01 and 10.09.

The Court reviews *de novo* the Lien Judge's findings of fact and conclusions of law.  28 U.S.C. § 157(c)(1).

### B.    Timely Appeal

The Barrios clients argue that Dr. Onel filed his appeal beyond the time to file an appeal set forth in the June 30, 2005 Amended Stipulation and Order Establishing Procedures for the

Review of Asserted Liens Against Settling Implant Claimants ("Lien Review Procedures").  Dr. Onel argues the appeal was timely filed on June 20, 1006.

The Lien Review Procedures provide that a "party may appeal the decision of the Lien Judge by filing a Notice of Appeal with the District Court within 14 days of the date of the notice from the SF-DCT providing the decision of the Lien Judge."  (Lien Review Procedures, § 7.01) The SF-DCT mailed the Lien Judge's decision on May 31, 2006.  (Barrios Br., Ex. 16) The Lien Review Procedures provides that "[i]f the time period is 20 days or less, the computation of days shall exclude Saturday, Sunday, and federal holidays."  (Lien Review Procedures, § 10.01)

Counting the day the decision was mailed by the SF-DCT, May 31, and excluding Saturdays and Sundays, the Barrios clients argue that 14 days from May 31 falls on June 19, 2006, therefore, the June 20, 2006 filing date of Dr. Onel's appeal is untimely.

The Lien Review Procedures approved by the Court govern the appeal, including the provision computing the deadlines set forth in § 10.01.  The Barrios clients' computation is correct if the day the decision was mailed by the SF-DCT is counted in the computation.  However, the Lien Review Procedures are silent as to whether the day of the act (here, the mailing of the decision) is to be included in the computation.  Rule 6 of the Rules of Civil Procedures govern the computation of any period if an order does not expressly state how to compute a time limit.  The rule provides that "the day of the act, event, ... from which the designated period of time begins to run shall not be included" in computing any period of time prescribed by any order of the court.  Fed. R. Civ. P. 6(a).  Applying Rule 6 and § 10.01 of the Lien Review Procedures, the time to file a lien appeal begins the day after the SF-DCT mails the Lien Judge's decision.  The SF-DCT mailed the decision on May 31, therefore, the first day of the 14-day time period begins the day after, June 1, 2006.  Excluding Saturdays and Sundays,

day 14 falls on June 20, 2006.  Dr. Onel's appeal from the Lien Judge's decision to this Court is timely filed.

### C.    Dr. Onel's Liens

#### 1.    No Funds at Issue

In 1994, Ann Lazzara and Lester Clark represented the claimants at issue in this matter. Lazzara and Clark retained the professional services of Dr. Onel with respect to providing expert medical reports in the multi-district breast implant litigation, MDL 926, before the United States District Court, Northern District of Alabama.   The Reorganized Debtor, Dow Corning Corporation, initially participated in the attempted resolution of the various breast implant litigations involving different manufacturers.

On August 17, 1994, Lazzara and Clark executed a Letter Agreement setting forth the terms of Dr. Onel's compensation.  (Onel Br., Ex. C) The August 17, 1994 Letter Agreement purports to guarantee payment of $4,000.00 per each of the claimants represented by Lazzara and Clark.  The parties subsequently signed an Agreement dated August 24, 1994 indicating that the attorneys shall make an initial payment in the amount of $200.00 per client.  (Onel Br., Ex. E) The August 24, 1994 Agreement does not expressly set forth a $4,000.00 per client payment to Dr. Onel but provides that Dr. Onel would be paid "immediately upon release of same by the court in the above referenced multi-district litigation, those amounts per Client allowed and authorized by the court toward payment of the medical/physician examination and evaluation fees from that settlement fund account set aside/established for payment of such." (One. Br., Ex. E)  The MDL Breast Implant Settlement Program/Global Settlement fell apart.  Dow Corning filed bankruptcy in May 1995 before this Court.  The MDL 926 court approved a Settlement

4

with the non-Dow Corning manufacturers on December 22, 1995, commonly referred to as the Revised Settlement Program ("RSP").

In the bankruptcy action, Dow Corning and the Tort Claimants Committee in the bankruptcy action eventually agreed to the Amended Plan of Reorganization, which became effective on June 1, 2004. The claimants at issue in this matter thereafter participated in the bankruptcy action and elected to be paid under the SFA. The SF-DCT has issued payments to the claimants subject to the lien filed by Dr. Onel.

The Lien Judge, after reviewing the documents and arguments submitted by the parties, issued his ruling on May 31, 2006. The Lien Judge noted in his ruling that the August 17, 1994 Letter Agreement, and the other "iterations" of the letter, all indicate payments over $200.00 per individual would be paid from the Global Settlement approved by the MDL court. (May 31, 2006 Lien Judge Decision) The Lien Judge further noted that the Global Settlement failed to come to fruition and that no fees for medical evaluations have ever been paid under the RSP. The Lien Judge found that Dr. Onel and claimants' then-counsel contemplated that Dr. Onel would be paid from the Global Settlement and since the payment was contingent upon full settlement of each client's claim through the MDL Breast Implant Settlement Program, the $4,000.00 fee was in the nature of a contingency fee, success fee, or bonus. Since the parties contemplated that some portion of the $4,000.00 fee would be paid from the Global Settlement, there are no funds at issue that could be subject to the August 17, 1994 Letter Agreement. The Lien Judge also found that the $4,000.00 fee report for each claimant is unreasonable and inequitable in that in all his experience with the Silicone Gel Breast Implant Litigation, he had "never seen nor heard of a $4,000.00 fee for a report." (May 31, 2006 Lien Judge Decision) The

Lien Judge further found that the expense for the reports is not reasonable and as such unenforceable pursuant to § 6.05 of the Lien Review Procedures.

The Lien Review Procedures apply to disputes between claimants who have been determined to be eligible and have been paid by the SF-DCT and persons or entities who assert the right to receive a portion of the payments to the claimants from the SF-DCT.  (Lien Review Procedures, § 1.01)  Section 6.05 of the Lien Review Procedures provide that all expenses incurred sought to be recovered must be reasonable in relation to the work performed and the result obtained.  (Lien Review Procedures, § 6.05) Allowable expenses incurred by an attorney who is an Alleged Lienholder are set forth in the Claimant Information Guide for Class 5 Breast Implant Claims and the Agreed Order Adopting Q&A's Regarding Article IX of Annex A, The Claims Resolution Procedures, July 22, 2004.  (Lien Review Procedures, § 6.05) It is noted that claimants' counsel, former or current, are not claiming the expenses on behalf of Dr. Onel.

Upon a *de novo* review of the Lien Judge's decision and the documents submitted by the parties, the Court agrees with the Lien Judge that the August 17, 1994 Letter Agreement contemplated that the $4,000.00 fee would be paid from the Global Settlement funds.  Because the Global Settlement never came to fruition, and $4,000.00 fee was some form of a contingent payment, the funds from the SF-DCT are not at issue.  The Court's interpretation of the letter supports this conclusion.  The letter served as a confirmation of the parties' agreement, "to guarantee unto you a payment of $4,000.00 per each of our approximately 467 breast implant clients, *subject only to the following stipulations: . . .  c) That said payment of $4,000 will be paid upon full settlement of each client's claim via the MDL Breast Implant Settlement Program.*"  (Aug. 17, 1994 Letter Agreement)(italics added)

6

Based upon the language of the letter, the intent of the parties was that the $4,000.00 fee was contingent upon or "subject to" the "full settlement" of the claims "via the MDL Breast Implant Settlement Program." The Letter Agreement does not contemplate the $4,000.00 fee to be paid from any other funds, other than funds to pay claims before the MDL 926. The subject matter line of the letter indicates, "Breast Implant Clients in the MDL 926 Federal Court litigation now pending at Birmingham, Alabama." (Aug. 17, 1994 Letter Agreement) The MDL and the MDL Settlement Funds are referred to throughout the letter. Nothing in the letter indicates that the $4,000.00 fee would be paid from any other funds should the MDL Settlement Funds fail to come to fruition. The Agreement entered into by the parties on August 24, 1994 makes no mention of the $4,000.00 fee. The Lien Judge did not err in finding that there were no funds at issue before him from which the $4,000.00 fee per client could be taken since the August 17, 1994 Letter Agreement was contingent upon a "Global Settlement" before the MDL 926. No such settlement occurred and Dow Corning is not a party to the current Revised Settlement Program before the MDL 926 court.

### 2.    Reasonableness

The Lien Judge determined that the $4,000.00 fee per report was unreasonable and that in the more than ten years the Lien Judge has been involved in the Silicone Gel Breast Implant Litigation, he had never seen nor heard of a $4,000.00 for a report. (May 31, 2006 Lien Judge Decision)

As indicated above, § 6.05 of the Lien Review Procedures provides that all expenses incurred and sought to be recovered must be reasonable in relation to the work performed and the result obtained. It further provides that allowable expenses incurred by an attorney who is an Alleged Lienholder are set forth in the Claimant Information Guide for Class 5 Breast Implant

7

Claims and the Agreed Order Adopting Q&A's Regarding Article IX of Annex A, The Claims Resolution Procedures, July 22, 2004.   (Lien Review Procedures, § 6.05)   Medical-related chargeable expenses are limited to: medical evaluation expenses; expenses incurred in obtaining copies of medical records; and medical bills paid on the claimant's behalf.   (Claimant Information Guide for Class 5 Breast Implant Claims, Attorney Fees and Expenses, Q.11-4)

Analogizing Dr. Onel's fee request to attorney fee requests in the Sixth Circuit, the district court must determine whether the amount requested is reasonable.   *See, Northcross v. Board of Education of the Memphis City Schools*, 611 F.2d 624, 636 (6th Cir. 1979); *Hensley v. Eckerhart*, 461 U.S. 424 (1983).   The district court has the discretion to adjust the requested fee upward or downward, taking into account many factors.   *Hensley*, 461 U.S. at 437.   The court should look to the fair market value of the services provided which reflects the training background, experience and skill of the person rendering service.   *See, Northcross,* 611 F.2d at 638.

Dr. Onel recognizes the Court's discretion in awarding "expert fees" but argues that the Lien Judge's rejection of the liens results in a cap on the fee of $200.00 per claimant.   Dr. Onel claims that this amount is unreasonably low given that Dr. Onel closed his practice for several months and dedicated his time and practice to the evaluation of the claimants and preparation of over four hundred reports.   Dr. Onel did not submit any documentation as to the amount of other medical doctors' fees received for evaluating silicone gel breast implant claimants in this breast implant litigation or any other breast implant litigation.

The claimants argue that the expenses claimed by Dr. Onel does not positively relate to the results obtained before the SF-DCT.   Claimants argue that the disease/disability claims filed before the SF-DCT indicate that the SF-DCT rejected approximately 44% of Dr. Onel's QMD

reports.  (Barrios Br., Ex. 18) The claimants argue that a substantial portion of Dr. Onel's reports assigned a "B" disability level to various claimants, a claim which would pay $20,000.00.   A reduction of one disability level, to a "C" level pays $10,000.00.  With a payment to Dr. Onel of an additional amount of $4,000.00, less other expenses, Dr. Onel would receive almost the identical amount as a claimant who is eligible for the level "C" amount, a little over $4,000.00. (See Barrios Br., p. 14) Claimants argued before the Lien Judge that a range of fees charged for a report from a QMD is anywhere between $100.00 to $800.00.

The Court finds that the Lien Judge's finding that the $4,000.00 fee per claimant is unreasonable and inequitable was not in error.   Other than the QMD range of fees noted in the Lien Judge's decision, there is nothing to support Dr. Onel's requested $4,000.00 report fee per claimant.  The $200.00 per claimant fee Dr. Onel already received appears to be within the range of what a QMD charges in breast implant litigation.  Given that the claimants are receiving between $10,000.00 to $20,000.00 and the lack of evidence showing that the requested fee falls within a customary fee for the same services, the $4,000.00 requested report fee per claimant is unreasonable and inequitable.  Dr. Onel's lien in the amount of $4,000.00 fee per claimant is denied and set aside.

## III.   CONCLUSION

For the reasons set forth above, the Court finds that Dr. Onel is not entitled to the requested $4,000.00 fee per claimant.

IT IS ORDERED that Lien Appeal, Case No. 06-12774, is DENIED and DISMISSED. Dr. Onel's Lien is SET ASIDE.

IT IS FURTHER ORDERED that the following Lien Appeals are DISMISSED as MOOT, in light of the decision set forth above: Case No. 06-10778 (Penny Hodges); Case No. 06-10779 (Barbara Staples); Case No. 06-10781 (Katie Gould); and Case No. 06-10782 (Lilian Castille).


                                        _/s/ DENISE PAGE HOOD_____
                                        DENISE PAGE HOOD
                                        United States District Judge
DATED: October 31, 2006